JACKSON, Superintendent of Banks of Alabama, v. KYSER.

In re WILSON.

(Circuit Court of Appeals, Fifth Circuit. March 21, 1927. Rehearing Denied April 15, 1927.)

No. 4828.

1. Banks and banking ⚖═63½—Contract by officer to make good losses from continued operation, if bank were allowed by state superintendent to remain open, held not invalid.

A contract by which an officer and director of a state bank, in consideration of the bank being permitted to continue in business for a stated time, obligated himself to the state superintendent of banks to make good any loss to depositors or creditors by reason of such continuance, which · contract, as construed by the parties, did not free the bank from supervision by the banking department, held not invalid as requiring a suspension by the superintendent of his official duties.

2. Banks and banking ⚖═63½—Officer of insolvent bank held liable on contract to make good any loss to depositors or creditors by reason of the bank being permitted to continue in operation for a stated time.

Where an insolvent bank, about to be closed by the superintendent of banks, was permitted to continue in operation for a time on an agreement by an officer and director to make good any loss to depositors or creditors by reason of such continuance, at the end of which time it remained insolvent and was taken over for liquidation, and during the period some who were depositors or creditors at its beginning were paid in full, while the indebtedness to others remained the same, the latter clearly suffered loss through the continued operation, for which the surety was liable on his contract.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

In the matter of J. H. Wilson, bankrupt; George P. Kyser, trustee. From an order dismissing the petition of A. E. Jackson, as Superintendent of Banks of the State Banking Department of the State of Alabama, etc., an appeal was taken. Reversed and remanded.

Leon Weil and B. P. Crum, both of Montgomery, Ala., for appellant.

J. K. Dixon, of Talladega, Ala. (Knox, Dixon, Sims & Bingham, of Talladega, Ala., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from an order dismissing a petition filed by the appellant as superintendent of banks of the state of Alabama against the trustee of the estate of J. H. Wilson, a bankrupt.

That petition asserted the claim that proceeds of the sale, under the court's order, of land of the bankrupt in excess of the amount thereof required to satisfy a first mortgage on that land, were subject to be applied in accordance with the terms of a mortgage of that land executed on June 9, 1924, by the bankrupt to the appellant as such superintendent, to secure performance of a contract of the same date between the bankrupt and the appellant. The following is a copy of the body of that contract:

"Know all men by these presents, that whereas, I, J. H. Wilson, am an officer and director of the Lincoln Bank & Trust Company, of Lincoln, Alabama, a state bank which is under the direction, supervision, and control of the banking department of the state of Alabama; and

"Whereas, the banking department of the state of Alabama has made an examination of the affairs, business, and condition of the said bank, and has required the said bank to make a statement of its financial condition, and the said bank has rendered to the banking department a statement as to the financial condition of its affairs of the date of February 2, 1924, which is on file in the banking department of the state of Alabama, and which is not wholly satisfactory to the banking department, and the said banking department apprehends that the said bank is in 'an unsound or unsafe condition to transact the business for which it was organized, or that it is unsafe for it to continue business'; but

"Whereas, the undersigned officer and director of the said bank is satisfied that the financial affairs and business of the said bank are not in 'an unsound or unsafe condition to transact the business for which it was organized, or that it is [not] unsafe for it to continue business,' and that it is not necessary for the banking department, acting through the superintendent of banks, to take possession of the property of the said bank, or the business of the said bank, for the purpose of liquidating its affairs, and that it is perfectly safe for the banking department and the state of Alabama to permit the said bank to continue business upon the following conditions, which are approved by the superintendent of banks:

"Now, therefore, these presents witness that in consideration of the superintendent of banks of the state banking department allowing the said bank to continue operations as heretofore until the 1st day of January, 1925, and that the state banking department will take no further action to the end of the said department taking over the bank for the purpose of liquidating its financial affairs until

the 1st day of January, 1925, unless the board of directors of the said bank, by a vote of the majority of such board, requests the superintendent of banks to take charge of and liquidate the affairs of the said bank, I, the said director and officer of the said Lincoln Bank & Trust Company, agree, obligate, and bind myself to hold all of the depositors and creditors of said bank harmless from any loss in consequence of or by reason of the failure of the banking department of the state of Alabama proceeding to take charge of and to liquidate the affairs of the said bank, or on account of any mismanagement of the affairs of the said bank by the officers and directors thereof, and if at the expiration of this agreement, the 1st day of January, 1925, it should be necessary for the banking department of the state of Alabama to take charge of and liquidate the affairs of said bank, as is authorized and required by law, I, the said director and officer of the said bank, agree to pay to the superintendent of banks of the said banking department, A. E. Jackson, or his successor in office, for the sole use and benefit of the depositors and creditors of said bank at that time, whatever amount they may have lost by reason of or in consequence of the banking department failing to take charge of and liquidate the affairs of the said bank, or on account of mismanagement of the affairs of the said bank by the officers and directors thereof; that is to say, I, the undersigned officer and director of the said bank, agree to save harmless or indemnify the depositors or creditors of the said bank from any loss which they may have sustained in consequence of the banking department of the state of Alabama having failed to take over and liquidate the affairs of the said bank, as it is authorized by law to do, or on account of or in consequence of the mismanagement of the affairs of the said bank by the officers or directors thereof."

The condition of the mortgage of the bankrupt to the appellant is in accordance with the terms of that contract. Evidence adduced showed the following:

The bank mentioned continued operations as theretofore from June 9, 1924, to January 7 or 8, 1925, when it was closed, and its assets were taken possession of by the appellant for liquidation. On the former date it owed individual depositors $11,779.37, on time certificates of deposit $1,786.15, on cashier's checks $156.17, and for unpaid dividends $144. When it was closed, and its assets were taken over by appellant, it owed individual depositors $3,817.03, $800 thereof being owing to the bankrupt, on time certificates $180, on cashier's checks $41.16, and for unpaid dividends $144. All money received by the bank during the period mentioned from any source was paid out on the debts owing to depositors and other creditors of the bank, except the amount of the actual expense of operating the bank. During that period no additional amount was borrowed by the bank and there were few new depositors.

It was admitted that from assets of the bank received by the appellant the amount realized would be more than $15,000 less than enough to pay what it owed to depositors and other creditors. At the beginning of and throughout the period mentioned a large part of the bank's assets, notes and bills payable, etc., was held as collateral by two other banks, to which it was indebted. During the period mentioned the bank made to the state banking department a report of its condition, the appellant as superintendent exercised supervision of its affairs, and conduct of the bank's officials indicated their recognition of the appellant's right to do so, in that, with reference to criticism by the banking department of items shown by that report, accompanied by notice to the bank that it would be called before the banking board for the purpose of its assets being taken over for liquidation unless stated requirements were complied with, the bank took action and promised compliance with those requirements.

Alabama statutes (3 Code Ala. 1923, § 6275 et seq.) provide for a superintendent of banks and a banking board, composed of the superintendent and two other persons appointed by the Governor, for the superintendent supervising the administration of the affairs of banks, for his taking charge of and liquidating the affairs of any bank when requested to do so by its board of directors or directed to do so by the banking board, and (section 6299) that he may call a meeting of the banking board and submit to it matters of default or misconduct of the affairs of a bank, if from any examination he shall have reason to conclude that the bank is in an unsound or unsafe condition to transact the business for which it was organized, or that it is unsafe for it to continue business.

[1] A director and officer of a bank may, in consideration of the bank being permitted to continue business when its assets are considered insufficient, bind himself to make good a shortage in its assets. Edwards v. Alabama Penny-Prudential Savings Bank, 200 Ala. 369, 76 So. 285. Though the above set out contract provided for the banking department

taking no further action to the end of taking over the bank for the purpose of liquidation until January 1, 1925, the contract as practically construed by the conduct of the parties was consistent with its not having the effect of keeping its affairs from remaining subject to appellant's supervision, or its assets from remaining subject to be taken over for liquidation in the event of new misconduct or default being disclosed by a report or investigation during the period mentioned. We have not been convinced of the correctness of the conclusion suggested that the contract in question is invalid, on the ground that it plainly involved an unwarranted suspension during the period mentioned of the exercise by the appellant of his official duties and powers.

[2] By the terms of the contract in question the bankrupt agreed that if, at the expiration of the period stated, it should be necessary for the banking department of the state of Alabama to take charge of and liquidate the affairs of the bank, he would pay to the appellant or his successor in office, for the sole use and benefit of the depositors and creditors of the bank at that time, whatever amount they may have lost by reason or in consequence of the banking department failing to take charge of and liquidate the affairs of the bank, or on account of mismanagement of the affairs of the bank by the officers and directors thereof. The language used being clear and unambiguous, and there being no averment or proof of mistake, that language alone is to be considered in determining the intention of the parties. It may be inferred from the evidence that many debts owing by the bank at the time it was permitted to continue operations as theretofore were paid in full during the period mentioned, and that some of its debts which were in existence at the beginning of that period remained in existence when its affairs were taken over by the banking department for liquidation soon after January 1, 1925.

In the absence of evidence of mismanagement of the bank's affairs by its officers and directors during that period, it also may be inferred that no more than was realized from the assets it had at the beginning of or during that period would have been realized therefrom, if those assets had been taken over for liquidation during that period, and that throughout that period those assets were insufficient in value to pay the debts then owing by the bank. If at the beginning of or during that period those assets had been taken over for liquidation, the net proceeds of them would have been distributed rateably among the bank's creditors, except so far as that result was subject to be affected by the fact that some of those assets were held by creditors as security for debts owing to them.

Evidence adduced plainly indicates that some persons who were creditors of the bank throughout the period mentioned, for instance, ordinary depositors having no security, sustained loss in consequence of the bank being permitted to continue operations, as other creditors in like situation who were paid in full during that period received part of what would have gone to those whose debts were not paid, if the assets the bank had at the beginning of or during that period had then been taken over for liquidation. It well may be inferred from the evidence that creditors whose debts were in existence throughout the period mentioned will realize less from the assets the bank had at the beginning of that period than they would have realized therefrom if those assets had been taken over for liquidation at the beginning of that period. It is evident that a creditor of an insolvent debtor, who gets nothing on his debt but a pro rata share of the proceeds of the debtor's assets left after the payment in full of debts owing to other creditors in like situation, sustains a loss in consequence of such payments to other creditors.

By the terms of the contract the bankrupt was obligated to save all the bank's creditors harmless from any loss in consequence or by reason of the failure of the banking department to take charge of and liquidate the bank's affairs. As the evidence indicated that the bank had creditors in whose favor that obligation was incurred and is enforceable, we conclude that the court erred in dismissing the petition. Because of that error the order appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.